**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GARY PHILLIP EVANS,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 1:09-1013** |
| **v.** | : | **(CONNER, D.J.)** |
| | | **(MANNION, M.J.)** |
| **YORK COUNTY ADULT** | : | |
| **PROBATION AND PAROLE** | | |
| **DEPARTMENT, and** | : | |
| **DONALD R. LAUER, JR.,** | | |
| **Individually,** | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

Presently pending before the court are: (1) the defendants' motion for summary judgment, (Doc. No. 12), and the plaintiff's motion for partial summary judgment, (Doc. No. 20). Based upon the court's review of the motions and related materials, it is recommended that the defendants' motion for summary judgment be granted and the plaintiff's partial motion for summary judgment be dismissed.

## I.     PROCEDURAL HISTORY

By way of relevant background, the plaintiff filed the instant civil rights action pursuant to 42 U.S.C. §1983 on May 28, 2009.  (Doc. No. 1).

On January 29, 2010, the defendants filed their motion for summary judgment with attached exhibits, (Doc. No. 12), and a statement of material facts, (Doc. No. 15).  The defendants filed a brief in support of their motion for summary judgment on February 1, 2010.  (Doc. No. 18).  On February 16,

2010, the plaintiff filed a response to the defendants' statement of facts, (Doc. No. 27), along with an opposing brief, (Doc. No. 28).

In the meantime, on February 15, 2010, the plaintiff filed his partial motion for summary judgment, (Doc. No. 20), along with a supporting brief, (Doc. No. 21). On February 16, 2010, the plaintiff filed a statement of facts in support of his partial motion for summary judgment. (Doc. No. 25). Supporting exhibits were filed by the plaintiff on February 18, 2010. (Doc. No. 29). On February 23, 2010, the defendants filed an answer to the plaintiff's statement of material facts. (Doc. No. 30). An opposing brief was filed by the defendants on February 26, 2010. (Doc. No. 33). The plaintiff filed a reply brief in support of his partial motion for summary judgment on March 8, 2010. (Doc. No. 34).

By order dated June 21, 2010, the district judge referred the motions for summary judgment to the undersigned for report and recommendation. (Doc. No. 35).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

> ". . . [T]he plain language of Rule 56(c) mandates the
> entry of summary judgment, after adequate time for
> discovery and upon motion, against a party who fails
> to make a showing sufficient to establish the
> existence of an element essential to that party's case,
> and on which that party will bear the burden of proof
> at trial. In such a situation, there can be 'no genuine
> issue as to any material fact,' since a complete failure
> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all other
> facts immaterial. The moving party is 'entitled to
> judgment as a matter of law' because the nonmoving
> party has failed to make a sufficient showing on an
> essential element of her case with respect to which
> she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn

therefrom in the light most favorable to the nonmoving party.  Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor.  Id.

## III.    DISCUSSION

The plaintiff's complaint alleges the following factual background:

On February 28, 2007, in the Court of Common Pleas for York County, Pennsylvania, the Honorable Penny Blackwell sentenced the plaintiff to 11 ½ to 23 months in the York County Prison on two counts of Indecent Assault, to be served concurrently, followed by a consecutive sentence of 5 years probation for Corruption of Minors and Unlawful Contact with Minors.  (Doc. No. 1, ¶9).

The plaintiff was paroled on December 13, 2007, and came under the defendants' supervision.  (Doc. No. 1, ¶18).

On March 9, 2009, the state court granted the plaintiff's post-conviction petition and reinstated his right to appeal his conviction *nunc pro tunc*.  (Doc. No. 1, ¶10).  On March 13, 2009, Judge Blackwell released the plaintiff on bail pending his appeal. (Id. at ¶11). On March 24, 2009, the plaintiff filed the appeal from his conviction and sentence to the Pennsylvania Superior Court. (Doc. No. 1, ¶12).

Even though he was no longer on parole, the plaintiff alleges that the

4

defendants have continued to restrain him. (Doc. No. 1, ¶13). Specifically, defendant Lauer, the plaintiff's probation officer, had told the plaintiff that he was still on parole and had required the plaintiff to attend weekly sessions with him. (Id. at ¶15). At the first session, on March 17, 2009, defendant Lauer allegedly threatened to send the plaintiff back to jail if he continued to deny committing the underlying sexual offenses. (Doc. No. 1, ¶16). The plaintiff alleges that the defendants had previously incarcerated him for failure to confess the underlying offenses[1]. (Id. at ¶17).

Due to his denial of the offenses, the plaintiff alleges that he has undergone a therapeutic polygraph examination by Raymond E. Solt. (Doc. No. 1, ¶20). The examiner found that the plaintiff was "substantially truthful" in his denial of ever touching the alleged victim's vaginal area or chest area. (Id. at ¶21).

In addition, on April 23, 2008, the plaintiff underwent an Abel Assessment for sexual interest as part of his required sexual offender treatment. (Doc. No. 1, ¶22). Molly Simmons, M.S., NCC, L.P.C., a Certified Sexual Offender Treatment Specialist, concluded based on the test results that the plaintiff does not appear to have a persistent sexual interest in pre-

---

[1]This apparently occurred prior to the plaintiff being released on bail. With respect to the plaintiff's interactions with the defendants prior to his release on bail, the plaintiff alleges that these interactions are relevant, not because he is seeking vindication of his constitutional injuries during that time, but because they highlight the Parole Department's policies, customs and practices. (Doc. No. 1, ¶19).

adolescent females, a persistent sexual interest in males, or a significant interest in sadistic sexual behavior. (Id. at ¶23).

Nevertheless, the Parole Department and defendant Lauer had the plaintiff arrested on October 7, 2008, based on his "persistent denial of the incident offense." (Doc. No. 1, ¶24). The Parole Department, in a petition signed by defendant Lauer and his supervisor, Amy Alu, requested the state court sign a permanent detainer, which the state court granted on October 8, 2008. (Id. at ¶25).

On November 26, 2008, the Parole Department, in a petition for revocation signed by defendant Lauer and Ms. Alu, recognized that the plaintiff's parole concluded on January 26, 2009. (Doc. No. 1, ¶26).

On December 19, 2008, Judge Blackwell held a revocation hearing. (Doc. No. 1, ¶27). At the hearing, the plaintiff opposed revocation arguing that requiring him to confess to the underlying offenses violates his Fifth Amendment protection from self-incrimination and his First Amendment protection from being compelled to speak that which he does not belief. (Id. at ¶28). Because the plaintiff was ultimately released on bail pending appeal, which suspended the application of his sentence, the state court never ruled on his parole revocation proceedings or made any determination as to whether or not revocation was appropriate on the basis of his denial of the underlying offenses. (Id. at ¶29).

Even though the plaintiff is on bail and not parole, the plaintiff alleges

that the defendants have threatened to incarcerate him again unless he admits to the underlying offenses. (Doc. No. 1, ¶30).

Despite his release on bail, the plaintiff alleges that defendant Lauer has prohibited him from residing with his wife and three children at their home, which is located at 121 Sunset View Drive, New Cumberland, Pennsylvania 17070. (Doc. No. 1, ¶31). Further, in violation of a state court order, defendant Lauer has only allowed the plaintiff to see his children for one two-hour supervised visit per week[2] and did not let him see his children at all during the summer of 2008. (Id. at ¶¶33, 43). Defendant Lauer has threatened to arrest and detain the plaintiff if he violates this condition. (Id. at ¶34). The plaintiff has never been accused of any mistreatment, sexual or otherwise, toward his own children. (Id. at ¶36). In addition, there is no internet access in the home of his wife and children. (Id. at ¶37).

The plaintiff has sought to visit his home during the daytime, when his children are at school, to do paperwork, such as taxes, and to help his wife with tasks such as cleaning. (Doc. No. 1, ¶45). However, defendant Lauer has not allowed him to do so, even when the children are not there. (Id. at ¶46).

---

[2]When he was on parole, the plaintiff alleges that the defendants initially prohibited him from having any contact with his children. (Doc. No. 1, ¶38). On April 14, 2008, Judge Blackwell ordered that the Parole Department allow the plaintiff to visit his children for a minimum of one two-hour supervised session per week for the first two weeks and, after that, for two two-hour sessions per week. (Id. ¶41).

In addition, defendant Lauer has prohibited the plaintiff from leaving York County, except to attend one church service per week. (Doc. No. 1, ¶47). The plaintiff and his family have attended the same church in Cumberland County for about 20 years, and the plaintiff seeks to resume substantial involvement at church by weekly attending his adult Sunday School class on Sunday mornings, his church's worship service, and his men's Bible study class that meets on Wednesday evenings. (Id. at ¶¶49-50). Defendant Lauer has, however, prohibited the plaintiff from attending Sunday School and his men's Bible study and threatened to arrest the plaintiff if he violates this condition. (Id. at ¶¶51-52). Defendant Lauer told the plaintiff that this is the York Parole Department policy: persons under department supervision may only attend one church service per week. (Id. at ¶53). According to the plaintiff's complaint, there are no children in his Sunday School class or men's Bible study. (Id. at ¶54). Moreover, the state court never stated any restriction on the plaintiff's ability to attend church. (Id. at 55).

The plaintiff's complaint provides that he owns several rental properties in Cumberland County, which defendant Lauer has prohibited him from visiting. (Doc. No. 1, ¶¶56-57). The plaintiff wishes to visit these properties, as necessary, for repair and maintenance, as well as remodeling between tenants. (Id. at ¶¶59-60). Only one of the plaintiff's eleven rental units has minor children. (Id. at ¶61). Defendant Lauer has threatened to arrest and

detain the plaintiff if he violates this condition; however, at his bail hearing, the court never prohibited him from visiting his rental properties. (Id. at ¶¶58, 62).

Defendant Lauer has also prohibited the plaintiff from visiting his disabled mother in Cumberland County. (Doc. No. 1, ¶63). There are no children present at his mother's house, nor does the home have internet access or alcohol. (Id. at ¶65). Defendant Lauer has threatened to arrest and detain the plaintiff if he violates this condition. (Id. at ¶ 64).

The plaintiff's complaint indicates that he has applied for several jobs, many of which would involve access to the internet. (Doc. No. 1, ¶¶67-68). However, defendant Lauer has prohibited the plaintiff from accessing the internet and threatened to arrest and detain him if he violates this condition. (Id. at ¶ 66).

On March 24, 2009, defendant Lauer required the plaintiff to meet with him, at which time the plaintiff was wearing a suit. (Doc. No. 1, ¶¶70-71). Defendant Lauer demanded to know why the plaintiff was wearing a suit and became visibly enraged when the plaintiff indicated that he had a meeting scheduled with his counsel that day. (Id. at ¶¶71-72). Defendant Lauer demanded to know the contents of the plaintiff's conversations with his attorneys. (Id. at ¶73). When told that the conversations were private, defendant Lauer informed the plaintiff "You don't have a private life." (Id. at ¶74). Defendant Lauer threatened to arrest and detain the plaintiff if he did not disclose the contents of his conversations with his attorneys. (Id. at ¶75).

On March 31, 2009, the plaintiff again met with defendant Lauer, at which time he again demanded to know the contents of the plaintiff's conversations with his attorneys and threatened to arrest the plaintiff if he did not inform him of such. (Doc. No. 1, ¶¶76-77).

At the time of the filing of the instant action, the plaintiff indicated that he last met with defendant Lauer on April 7, 2009. (Doc. No. 1, ¶78). Prior to this meeting, Ms. Alu, defendant Lauer's supervisor, told defendant Lauer that the Parole Department believes that it might lack authority over the plaintiff, and that she was seeking clarification of the applicability of the Parole Department's policies, practices and customs to the plaintiff, who is on bail pending appeal. (Id. at ¶79). The plaintiff alleges that it is his belief that Ms. Alu sought clarification from Chief Albert J. Sabol and Deputy Chief Theresa A. Reichard, who are final policymakers for the Parole Department because they are her only supervisors. (Id. at ¶80). At the meeting, defendant Lauer informed the plaintiff of the Parole Department's confusion regarding the status of his case, and asked the plaintiff to call back the next day. (Id. at ¶81).

On April 8, 2009, defendant Lauer told the plaintiff over the phone that the Parole Department, Ms. Alu and defendant Lauer recognized that the Parole Department lacked authority over the plaintiff. (Doc. No. 1, ¶82). Accordingly, defendant Lauer told the plaintiff that, according to information he received from Ms. Alu, the plaintiff would no longer be required to attend

weekly meetings. (Id. at ¶83). However, the plaintiff was also informed that the Parole Department would continue to forbid him from leaving York County except for one church service each week, and to forbid him from seeing his children except for one supervised visit per week. (Id. at ¶84). Defendant Lauer also told the plaintiff that the Parole Department might require him to undergo sexual offender counseling and to confess to the underlying offenses. (Id. at ¶85). Seeking clarity, the plaintiff alleges that he twice left phone calls with Ms. Alu's office, but that she had not returned his calls. (Id. at ¶86).

On this factual background, the plaintiff has set forth the following counts in his complaint: Count I, a First Amendment claim relating to his allegations that defendant Lauer threatened to arrest and detain him unless he confessed to the underlying crimes; Count II, a First Amendment claim relating to his allegations that defendant Lauer threatened to arrest and detain him if he continued to declare his innocence; Count III, a Fifth Amendment claim relating to his allegations that defendant Lauer threatened to arrest and detain him if he fails to confess to his underlying offenses; Count IV, a Sixth Amendment right to counsel claim relating to his allegations that defendant Lauer threatened to arrest and detain him if he fails to confess to the underlying offenses outside the presence of counsel and if he fails to disclose confidential communications with counsel; Count V, a Fourteenth Amendment due process claim relating to his allegations that defendant Lauer threatened

to arrest and detain him if he lives with his wife and children, visits his children outside of the one two-hour supervised visit each week, or visits his disabled mother; Count VI, a First Amendment freedom of religion claim based upon his allegations that defendant Lauer threatened to arrest and detain him if he leaves York County except to attend one church service per week; Count VII, a First Amendment freedom of association claim based upon his allegations that defendant Lauer threatened to arrest and detain him if he leaves York County except to attend one church service per week; Count VIII, a Fourteenth Amendment right to travel claim based upon his allegations that defendant Lauer threatened to arrest and detain him if he leaves York County except to attend one church service per week; Count IX, a First, Fifth, Sixth and Fourteenth Amendment retaliation claim based upon his allegations that defendant Lauer threatened to arrest and detain him if he fails to confess to the underlying crimes outside the presence of counsel, maintains his innocence, fails to disclose confidential communications with counsel, or if he leaves York County except to attend one church service per week; and Count X, a municipal liability claim. (Doc. No. 1, pp. 13-29).

Based upon the above claims, the plaintiff is seeking declaratory and injunctive relief, as well as compensatory and punitive damages. (Doc. No. 1, p. 30).

## A.    Defendants' Motion for Summary Judgment

In relation to the parties' motions for summary judgment, the following facts are not in dispute and are established by the record:[3]/[4].

On February 28, 2007, in the Court of Common Pleas for York County, Pennsylvania, the Honorable Penny Blackwell sentenced the plaintiff to 11 ½ to 23 months in the York County Prison for two counts of Indecent Assault to be served by a consecutive sentence of five years probation for Corruption of Minors and Unlawful Contact with Minors.

On March 9, 2007, the plaintiff's former counsel, Joseph Kalasnik, filed a post-sentence motion on the plaintiff's behalf. On April 3, 2007, the York County Court of Common Pleas issued an order directing the plaintiff to file an amended post-conviction petition, which was done on April 11, 2007. Subsequently, on June 21, 2007, the court denied the post-conviction petition. The plaintiff did not file a direct appeal of his conviction or sentence within thirty days of June 21, 2007. The defendants' materials provide and the plaintiff does not dispute that Attorney Kalasnik never pressured Melody Evans, the plaintiff's wife, into a decision not to appeal Judge Blackwell's decision to deny the plaintiff's post-conviction petition. Melody Evans testified that the decision not to appeal the order was based upon the belief that it was

---

[3]The undisputed facts provided in the parties' statements of fact have been combined and are used in relation to both the defendants' motion and the plaintiff's partial motion for summary judgment.

[4]Only facts in need of explanation contain record citations.

too expensive and that an appeal was not likely to succeed. Melody Evans wrote a letter to Attorney Kalasnik a couple of weeks after the expiration of the appeal deadline in July of 2007 indicating that she and the plaintiff believed that it was too expensive to file an appeal and that the filing of appeal would be fruitless[5]. The plaintiff testified that he asked Attorney Kalasnik to file an appeal of Judge Blackwell's decision to deny the post-conviction petition; that he believed the appeal was filed and that he found out later that the appeal was not filed.

In a letter dated June 27, 2007, the plaintiff was warned by Attorney Kalasnik that he would most likely be required to successfully complete sex offender treatment during his five year consecutive probationary period or face violation of his probationary status[6].

Due to his denial of the underlying offenses, on September 25, 2007, the plaintiff was required to undergo a therapeutic polygraph examination by Raymond E. Solt, who found that the plaintiff was "substantially truthful" in his denial of ever touching the alleged victim's vaginal or chest area.

On October 22, 2007, the plaintiff executed the Sex Offender Conditions

---

[5]The plaintiff does not dispute this, but indicates that Melody Evans later found out from the plaintiff that it was actually his intention to file an appeal. (Doc. No. 27, ¶76).

[6]The plaintiff does not dispute this fact, but adds that his attorney also informed him that, if his sexual offender treatment required him to confess, then he need not submit to such conditions which could hurt his case on appeal.  (Doc. No. 27, ¶59).

14

indicating that he read the conditions and was aware of their contents.

After application of earned time credit, the plaintiff was released on parole on December 13, 2007, and came under the supervision of defendant Lauer, a parole officer, and the York County Adult Probation and Parole Department, ("YCAPPD").

While on parole, the plaintiff was required to abide by the standard conditions for York County defendants subject to probationary supervision set forth in a document entitled "Regulations and Conditions of Probation, Parole and Intermediate Punishment.[7]" The plaintiff reviewed and signed the document "Regulations and Conditions of Probation, Parole and Intermediate Punishment" indicating that he read the document and was fully aware of its contents.

Condition No. 4 of the "Regulations and Conditions of Probation, Parole, and Intermediate Punishment" provides that the defendant shall not travel outside of York County without prior permission from his probation officer.

In addition, the plaintiff was subject to an Administrative Order issued by then-President Judge John H. Chronister on February 27, 2002, which required that Sex Offender Conditions be incorporated into a defendant's probation/parole supervision if the defendant is found guilty of a variety of offenses including indecent assault, corruption of minors and unlawful contact

---

[7]The plaintiff disputes that this applied once he was actually released on bail on March 13, 2009, and no longer on parole. (Doc. No. 27, ¶7).

or communication with minors.

As a result of his convictions for indecent assault, corruption of minors and unlawful contact or communications with minors, while on parole[8], the plaintiff was subject to the "Sex Offender Conditions" in addition to the "Regulations and Conditions of Probation, Parole, and Intermediate Punishment."

Condition No. 1 of the "Sex Offender Conditions" provides that the plaintiff was to obtain a sex offender evaluation by an agency designated by the York County Probation Department and follow through with all recommendations as per this evaluation, including the successful completion of the sex offender program[9]. (Doc. No. 29, Ex. L). Pursuant to this condition, the plaintiff was enrolled in a sex offender program administered by Triad Treatment Specialists, Inc., ("Triad"). The Core Group Objectives listed for Triad include "accepting full responsibility for offending behavior without the use of minimization, avoidance, denial or blaming the victim" and "full

---

[8]Again, the plaintiff disputes that he was subject to these conditions once released on bail on March 13, 2009. (Doc. No. 27, ¶14).

[9]Although the condition speaks for itself, the plaintiff disputes this to the extent that he claims that he was not waiving his constitutional rights in any way and did not fully understand the intentions or implications of the Parole Department's requirement. Further, the plaintiff contends that admission of guilt was not a condition of sex offender treatment under the Sexual Offender Conditions. (Doc. No. 27, ¶17).

disclosure of the current sexual offense and all previous victims[10]." (Doc. No. 12, Ex. 16).

Condition No. 4 of the "Sex Offender Conditions" requires the defendant to obtain approval prior to leaving the jurisdiction of the court.

Condition No. 6 of the "Sex Offender Conditions" provides that, if the offense involved a minor child, there is to be no unsupervised or unauthorized contact with minors and that any contact with minors must be pre-approved by the Probation Department. Prohibited contact includes, but is not limited to: frequenting any area or activity which is regularly attended by minor children, such as schools, playgrounds, swimming pools, carnivals, arcades, etc.; residing with minor children; occupying or traveling in a motor vehicle with a minor; cohabiting or sharing a residence with any individual who has minor children.

On January 10, 2008, Attorney Jay Kalasnik, on the plaintiff's request, filed a Petition to Modify Probation Conditions, ("Petition to Modify"). In the Petition to Modify, the plaintiff requested permission from the York County Court of Common Pleas to move to Cumberland County for the following reasons: (a) move in with his elderly mother; (b) work on rental properties owned by him located in Cumberland County; (c) reduce commute; and (d)

_____

[10]Although the document which sets forth the Core Group Objectives for Triad speaks for itself, the plaintiff challenges this statement claiming that any admission requirement was neither lawful nor required by the Sex Offender Conditions. However, as set forth above, successful completion of a sex offender program was required by the Sex Offender Conditions.

be closer to his church where he has been attending services and functions for twenty (20) years. In addition, the plaintiff's attorney requested that the plaintiff have supervised contact with his minor children[11]. (Doc. No. 12, Ex. 6).

The plaintiff was restricted from using the internet as part of the Sex Offender Conditions and this restriction was in place prior to the filing of the Petition to Modify. The Petition to Modify did not seek to set aside the restriction concerning internet use.

According to the plaintiff, he was limited to attending one church service per week with regard to his ability to participate in church activities. This limitation existed prior to the filing of the Petition to Modify. The Petition to Modify did not seek to set aside the YCAPPD policy that a convicted sex offender be prohibited from attending church functions outside of attending one church service per week.

The petitioner was restricted from travel outside of York County without prior permission from his Probation Office pursuant to Paragraph 4 of the Regulations and Conditions of Probation, Parole and Intermediate Punishment, as well as Paragraph 4 of the Sex Offender Conditions. The restrictions upon the plaintiff concerning his ability to travel outside of York County without prior permission of his probation officer existed prior to the

---

[11]Although his attorney requested only supervised visits, the plaintiff indicates that he asked his attorney to request permission to reside with his wife and children.  (Doc. No. 27, ¶24).

filing of the Petition to Modify. Although the Petition sought leave to establish a residence in Cumberland County, it did not seek to set aside the condition that limits his ability to travel within Pennsylvania without seeking prior approval of his probation officer.

The plaintiff attended the sex offender program offered by Triad prior to the filing of the Petition to Modify. The Petition to Modify did not seek to set aside Paragraph 1 of the Sex Offender Conditions, as cited above.

The relief sought in the Petition to Modify was as follows:

(1)    approve the transfer of his residence from York County to Cumberland County as described in the above Petition;

(2)    specifically approve the Petitioner's supervised contact with Petitioner's children at times, location, and with such supervisions as may be deemed appropriate by the Probation Department (but which may not be unreasonably denied);

(3)    render Petitioner subject to all other probation conditions not inconsistent with such orders.

The provisions of Paragraph 6 of the Sex Offender Conditions are as set forth above. The victim of the crimes for which the plaintiff was found guilty was a ten year old girl. The plaintiff has a daughter of approximately the same age as the victim of the crimes for which the plaintiff was found guilty. The plaintiff was aware of the constraints of Paragraph 6 of the Sex Offender Conditions at the time of the filing of the Petition to Modify. The Petition to Modify did not seek reunification with his family but only sought supervised

visitation[12].

On February 5, 2008, Judge Blackwell issued an order denying the plaintiff's Petition to Modify without prejudice, with directions to defendant Lauer to see if the plaintiff could be evaluated by Triad to see if supervisory contact would be appropriate. The plaintiff did not appeal this order.

On April 23, 2008, the plaintiff underwent an Abel Assessment for sexual interest as part of his sexual offender treatment. The Assessment concluded, *inter alia*, that objective measures, beyond the plaintiff's awareness, showed his greatest sexual interest to be in adolescent and adult females. (Doc. No. 29, Ex. E, p. 4). In contrast with these objective measures, the plaintiff self-reported neither a sexually arousing nor sexually disgusting, but rather a "neutral" response to adult and adolescent females. (Id.). In reference to the three main questions addressed by the assessment, it was concluded that the plaintiff did not appear to have a persistent sexual attraction to males, pre-adolescent females, or sadistic sexual behavior. (Id.).

On April 30, 2008, the plaintiff filed another post-conviction petition which claimed Attorney Kalasnik was ineffective both for not filing a direct appeal and for not filing an appeal of the decision denying the first post-conviction petition.

On October 1, 2008, the plaintiff was discharged from the sex offender program administered by Triad due to his failure to participate or disclose

---

[12]See n.11.

issues relevant to treatment and persistent denial of the incident offense.

On October 7, 2008, the YCAPPD filed a Petition for Probation/Parole/Intermediate Punishment Violation, requesting that a permanent detainer be lodged against the plaintiff claiming that the plaintiff had failed to successfully complete the sex offender program administered by Triad[13].

On November 26, 2008, the defendants petitioned the state court for revocation of the plaintiff's parole.

On December 8, 2008, Judge Blackwell issued an Order scheduling a violation hearing for December 19, 2008. On that date, Judge Blackwell conducted a hearing on the probation violation, as well as a PCRA hearing regarding the representation of Attorney Kalasnik. Defendant Lauer testified at the hearing that his petition for violation of probation conditions was based upon Triad's removal of the plaintiff from treatment due to the plaintiff's denial of his incident. He further testified that he primarily relied upon a letter from Triad, stating that the plaintiff was being released from the program, without successful completion of the program in coming to his decision to pursue a probation violation. The plaintiff opposed revocation by arguing that requiring him to confess to the underlying offenses violates his Fifth Amendment protection from self-incrimination and his First Amendment protection from

---

[13]The plaintiff denies violating any sex offender condition in that he claims that any admission requirement was neither lawful nor required by the Sex Offender Conditions. (Doc. No. 27, ¶30).

being compelled to speak that which he does not believe. Judge Blackwell never ruled on the probation violation issue and the plaintiff never appealed Judge Blackwell's failure to rule on the probation violation issue.

On March 9, 2009, the York County Court of Common Pleas reinstated the plaintiff's right to appeal *nunc pro tunc* from his conviction.

On March 13, 2009, Judge Blackwell conducted a bail hearing after which the plaintiff was released on bail pending appeal. Judge Blackwell ordered that the plaintiff's bail contain the condition that the plaintiff was not to have contact with any children except supervised contact with his own children[14]. The plaintiff did not appeal this order.

After the plaintiff was released on bail on March 13, 2009, defendant Lauer required the plaintiff to report for meetings with him, including on March 17, 2009, March 24, 2009, March 31, 2009, and April 7, 2009. Moreover, defendant Lauer continued to place parole restrictions on the plaintiff[15], including prohibiting him from leaving York County, except to attend one

---

[14]Although these conditions are not specifically set forth on the bail bond, the bond provides that the plaintiff "must obey all further orders of the bail authority." (Doc. No. 29, Ex. K). Judge Blackwell orally ordered these conditions at the bail hearing. (Doc. No. 12, Ex. 12).

[15]Although defendant Lauer denies this statement, he admits that the plaintiff was supervised until April 7, 2009, when he claims he learned that the plaintiff had filed his appeal with the Superior Court. (Doc. No. 30, ¶¶16, 18). The plaintiff claims in his materials that he informed defendant Lauer of his appeal prior to April 7, 2009.

church service per week[16].

On March 24, 2009, the plaintiff filed an appeal from his conviction and sentence to the Pennsylvania Superior Court.

On April 8, 2009, defendant Lauer informed the plaintiff that he would no longer be supervised[17]. No one from YCAPPD initiated contact with the plaintiff after this time. The parties do not dispute that the plaintiff remained subject to the conditions of his parole up until this time, even though he had been released on bail on March 13, 2009.

York County provides for a grievance procedure for any individual who wishes to request a review of an action, decision, policy or non-court ordered condition. While the plaintiff never filed a grievance of an action, decision, policy or non-court ordered condition with the Chief Adult Probation Officer, (Doc. No. 12, Ex. 1, Sabol Affidavit; Ex. 2, Plaintiff's deposition, pp. 33-35), he testified that he did convey grievances to defendant Lauer who informed him that the matters were discussed with his supervisors, (Doc. No. 12, Ex. 2, Plaintiff's deposition, p. 34).

The policies and practices of the YCAPPD are guided by the judges for

---

[16]The defendants admit that the plaintiff remained on this condition through April 7, 2009, but indicate that the condition was less restrictive than Judge Blackwell's order which provided that he was to have no contact with children other than his own while out on bail. (Doc. No. 30, ¶31).

[17]The plaintiff claims defendant Lauer informed him that he would no longer be supervised because he recognized that he lacked authority over the plaintiff, while defendant Lauer contends that he informed the plaintiff that it was because he had filed his appeal.

the York County Court of Common Pleas[18]. In late 2002 or early 2003, a policy was established upon the direction of Judge Chronister wherein, a defendant who was subject to the supervision of the YCAPPD and was then granted the right to file an appeal *nunc pro tunc*, the YCAPPD would continue supervision of the defendant until such time as YCAPPD received notice of the filing of the appeal[19]. This policy was initiated to prevent a defendant from posting bail and then delay filing the appeal[20]. The YCAPPD has applied this policy from the time of Judge Chronister's direction to the present and, in fact,

---

[18]The plaintiff disputes this fact on two bases. Initially, the plaintiff cites to the Sex Offender Conditions. (Doc. No. 29, Ex. L). Upon review, there is nothing in these Conditions which would refute Mr. Sabol's affidavit which provides that the policies of YCAPPD are guided by the County Judges. In fact, the defendants have provided an Administrative Order by then-President Judge Chronister of the York County Court of Common Pleas, which directs that the Sex Offender Conditions be imposed by the YCAPPD as part of the conditions of probation/parole upon those convicted of certain sexual offenses. (Doc. No. 12, Ex. 18).

The plaintiff further refers to Mr. Sabol's deposition testimony at pages 6, 8, and 10-13 to establish that the YCAPPD sets its own policies. Upon review, while these pages refer to and discuss some of the policies of the YCAPPD, they do not discuss how those policies originated. Therefore, this also does not refute the defendants' materials.

[19]The plaintiff disputes this fact on the basis that the statements made by Judge Chronister and relied upon by the defendants in stating their policy are inadmissible hearsay. However, it is clear that the defendants are not presenting the statements of Judge Chronister for the truth of the matter, but are providing those statements made by Judge Chronister to provide the foundation of the policy which was then established. Mr. Sabol, as the head of the YCAPPD, is certainly able to testify with respect to the policies of the YCAPPD in existence.

[20]See n.19.

24

applied it to the plaintiff's case[21].

On August 10, 2009, Judge Blackwell conducted a hearing on whether the plaintiff had violated the terms of the March 13, 2009, bail order by moving back into the family residence thereby having unsupervised contact with his children. At that hearing, the plaintiff's counsel admitted that he counseled the plaintiff based upon his misunderstanding of the court's order setting bail indicating his belief that the order was intended to restrict the parole department and not the plaintiff. At the conclusion of the hearing, Judge Blackwell allowed the plaintiff unsupervised contact with his own children, but prohibited the plaintiff from having any contact with other children[22].

With regard to his attendance at church, the materials provide that the plaintiff and his family have attended Christian Life Assembly, a church in Cumberland County, for about 20 years. The plaintiff sought to resume substantial involvement at church by weekly attending his Sunday School class on Sunday mornings, his church's worship service, and his men's Bible

---

[21]The plaintiff disputes this fact claiming that the policy was not that of Judge Chronister, but the YCAPPD. In support of this contention, the plaintiff relies upon the same deposition testimony of Mr. Sabol as referred to in n.18. Again, while this testimony speaks to certain of the policies in effect by the YCAPPD, it does not discuss the origins of the policies. Moreover, it is clear that the policy at issue did not originate until the direction of Judge Chronister.

[22]The plaintiff was permitted to attend church or other public places where he would have no more than passing contact with children, but he was directed not to be alone with any child. (Doc. No. 12, Ex. 13).

study class that meets on Wednesday evenings[23]. There are no children in the plaintiff's Sunday School class or in his men's Bible study.

Pastor Thomas G. Britton of Christian Life Assembly, the church attended by the plaintiff, estimates that between 40-60 girls aged 9-11 years attend Sunday School at the same time as the adult Sunday School and that 30-40 girls aged 9-11 years attend a Wednesday evening program at the same time as the men's Bible study. The plaintiff's wife estimated that approximately 15 girls participated in the Wednesday evening program. Pastor Britton testified that it is a significant concern of Christian Life Assembly that children attending church functions be secure from sex offenders. He testified that a church is an area where sex offenses can take place. He further testified that his particular church took fairly elaborate steps to protect children from abduction and contact with sex offenders, including placing them in secured areas where parents are not even allowed to enter.

The Parole Department has a policy of only allowing sex offenders to attend one church service per week because, "[i]t's been [Mr. Sabol's]

---

[23]The defendants deny this fact on the basis that the plaintiff did not make this specific request at his March 13, 2009, bail hearing. The defendants further respond that Judge Blackwell specifically ordered that the plaintiff was to have no contact with other children and that attendance at any church event would cause him to violate Judge Blackwell's order. The defendants have also indicated, however, that they allowed the plaintiff to go to church once per week while under supervision, including that time after he was released on bail, apparently, by their own account, in contravention of the court's order.

experience that most people attend church services once per week." Mr. Sabol testified that "I'm sure some people attend more frequently, but it's been my experience that the norm is one service per week.[24]" This policy is not in writing. Under the policy, the sex offender may attend a worship service, but may not attend Sunday School. Generally speaking, the policy is that requests to attend services other than one worship will be denied. However, if a sex offender is "doing very well in counseling," more church services may be permitted.

The plaintiff was prohibited from visiting several rental properties that he owns in Cumberland County[25]. The plaintiff wished to visit these properties, as necessary, for occasional repairs and maintenance and to remodel the units between tenants. Only one of the plaintiff's eleven rental units had minor children. Defendant Lauer threatened to arrest the plaintiff if he went to the

---

[24]The defendants further provide that Sex Offender Conditions No. 6 prohibits sex offenders from having unauthorized or unsupervised contacts with minors.

[25]The plaintiff claims that defendant Lauer restricted him from visiting the properties, (Doc. No. 25, ¶40), while defendant Lauer indicates that it was Judge Blackwell's order on the plaintiff's Petition to Modify which prevented the plaintiff from visiting the properties, (Doc. No. 30, ¶40). While Judge Blackwell's order denied the plaintiff's request to permanently transfer his probation supervision to Cumberland County, there is no indication that she entered a blanket prohibition from allowing the plaintiff to go to those properties. Further, defendant Lauer testified that ". . . after discussion, we didn't feel that it was appropriate to have an individual with sex offender history working at rental properties with keys," as these could be places where minors could reside. (Doc. No. 29, Ex. C, pp. 17-18).

properties[26]. In addition, the plaintiff was given a list of 19 other places that he could not go including, *inter alia*, parks, malls, parades, and book stores.

Al Sabol is the head of the Parole Department and is the overall administrator of the Department. In his deposition, Mr. Sabol testified that the Parole Department continued to supervise the plaintiff after his release on bail because it assumed that he was still under sentence. He further testified that the department ceased supervision of the plaintiff when it learned that he filed his *nunc pro tunc* appeal. Mr. Sabol testified that he told defendant Lauer to contact the plaintiff and inform him that the department would cease supervision. Mr. Sabol's responsibilities include, *inter alia*, supervising parole officers, determining what training parole officers should receive, and determining the policies for parole officers. Mr. Sabol indicated that, if a sex offender maintains his innocense, then a lie detector test is given. Mr. Sabol testified that the department's policy is that, if a person does not admit their offense and work through that in counseling, a lie detector test is given. If the person comes back with a determination of truthfulness, they would not be mandated to participate in sex offender counseling. In the plaintiff's case, Mr. Sabol indicated that, although he passed a lie detector test, he was still required to go through counseling because he admitted his intent to do the offense to a sex offender therapist. (Doc. No. 29, Ex. Q, pp. 12-13). Mr. Sabol

---

[26]Defendant Lauer admits that after the plaintiff was placed on bail this occurred. (Doc. No. 30, ¶41).

further indicated that, according to department policy, generally parole officers may not permit a sex offender to live with his minor children[27]. He further indicated that it is the department's policy to prohibit a sex offender from going home to be with his wife when the kids are not home unless the parole officer can "guarantee" that the kids will not come home.

Defendant Lauer does not recall receiving any training at all on constitutional or civil rights matters as a parole officer.[28]

Despite his claims of coercion, the plaintiff never revealed the contents of conversations between himself and his counsel to defendant Lauer or employees of the YCAPPD.

Defendant Lauer and Al Sabol, as well as other employees of YCAPPD, are employees of the County of York. YCAPPD is not a municipal entity separate and apart from the County of York.

Based upon the above undisputed facts, the defendants argue that they are entitled to summary judgment in their favor. For reasons other than those raised in the defendants' motion, the court agrees. Initially, although not raised as an issue in their motion for summary judgment, the defendant YCAPPD is entitled to summary judgment in its favor, as any action against

[27]The defendants provide that this policy is pursuant to the Sex Offender Conditions established by the Court of Common Pleas and applicable to the department through Administrative Order. (Doc. No. 30, ¶59).

[28]Defendant Lauer admits this statement, but indicates that he received training in civil rights and constitutional issues as a police officer. (Doc. No. 30, ¶67).

this defendant is barred by the Eleventh Amendment[29]/[30].

A state is immune from suits by its own citizens in federal court, as well as by citizens of other states, unless the state has consented to such suits. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). This immunity extends to an "arm of the state," as well as to the state itself. Mt. Healthy City Sch. Dist. Bd. of Edu. v. Doyle, 429 U.S. 274, 280 (1977). This immunity applies "regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). The Supreme Court has held that Congress did not intend for §1983 to overcome the sovereign immunity of the states embodied in the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 66-67 (1989).

The YCAPPD is a court entity of the Unified Judicial System of Pennsylvania and therefore is an arm of the State of Pennsylvania protected by the Eleventh Amendment. See Callahan v. City of Philadelphia, 207 F.3d

---

[29]Courts in the Third Circuit have *sua sponte* raised the issue of absolute immunity. See, e.g., Martin v. Keitel, 205 F. App'x 927-28 (3d Cir. 2006)(affirming district court's *sua sponte* dismissal of suit against prosecutor on basis that he was entitled to absolute immunity from suit for civil damages); Deangelo v. Brady, 185 F. App'x 173, 174-75 (3d Cir. 2006)(affirming district court's *sua sponte* dismissal of suit against defendants that were entitled to absolute immunity).

[30]The defendants do argue that YCAPPD is not a proper party to the complaint because it is not a separate and distinct municipal entity apart from the County of York, (Doc. No. 18, p. 6), and that, even if it were a proper party, the plaintiff has not sufficiently stated a claim for municipal liability against YCAPPD, (Doc. No. 18, pp. 28-30).

668, 672 (3d Cir. 2000)(finding that "[a]ll courts and agencies of the unified judicial system" are part of the Commonwealth government). The Pennsylvania Supreme Court has found that Probation Departments attendant to courts sitting in each county are court entities. First Judicial Dist. v. Pa. Human Relations Comm'n, 727 A.2d 1110, 1112 (Pa. 1999). In addition, the Third Circuit Court of Appeals has found that Pennsylvania's court entities are Commonwealth entities entitled to Eleventh Amendment immunity. Benn v. First Judicial Dist., 426 F.3d 233 (3d Cir. 2005)(as applied to the Philadelphia Court of Common Pleas).

Given this protection, a Pennsylvania court entity can only be sued in federal court if it or the state generally has consented to such suits. See 42 Pa.C.S.A. §8521(b)("nothing contained in this subchapter [Actions Against Commonwealth Parties] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981)("[b]y statute, Pennsylvania has specifically withheld consent" to suit in federal court)(citing 42 Pa.C.S.A. §8521(b)). Nothing in the record before the court establishes that the YCAPPD has given such consent.

Pursuant to 42 Pa.C.S.A. §102, "the government of the Commonwealth [includes] the courts and other offices and agencies of the unified judicial system . . ." The YCAPPD, as part of the Pennsylvania's Unified Judicial

System, is an arm of the Commonwealth. See Court of Common Pleas of Erie County Juvenile Probation Dep't v. Pa. Human Relations Comm'n, 682 A.2d 1246 (Pa. 1996).

Given the above, the YCAPPD is entitled to full Eleventh Amendment immunity under the law where sovereign immunity has not been abrogated. Moreover, the YCAPPD is a state entity, not a "person" under §1983 and therefore cannot be sued pursuant to §1983. As set forth above, a state entity cannot be sued regardless of the relief sought. Therefore, the defendant YCAPPD is entitled to summary judgment with respect to the plaintiff's claims against it[31].

With respect to the claims against defendant Lauer in his individual

---

[31]Although the court has found no authority from either the Third Circuit or the Middle District of Pennsylvania directly addressing this issue, other courts considering the issue have found that county probation departments are entitled to Eleventh Amendment immunity. See Beckett v. Vega, 2006 WL 1320043, **2-3 (D.N.J.)(citing Gencarelli v. Superior Court of New Jersey, 2005 WL 1490590, at *3 (D.N.J.)(looking to statutory law to determine that county probation departments are arms of the state entitled to Eleventh Amendment immunity); Clark v. Tarrant County, Texas, 798 F.2d 736, 745 (5th Cir. 1986)(holding that the county probation department, as part of a state probation program administered by the judicial districts, was an arm of the state within the meaning of the Eleventh Amendment and entitled to immunity from §1983 claims); Lovelace v. Dekalb Cent. Probation, 144 Fed. Appx. 793 (11th Cir. 2005)(unpublished)(§1983 claims against county probation department were barred by the Eleventh Amendment); O'Reilly v. Montgomery County, 2003 WL 23101795, at *1 (S.D.Ind.)(Eleventh Amendment immunity barred claims against county probation department brought under the Americans with Disabilities Act).

capacity[32], defendant Lauer argues that he is entitled to absolute immunity because he was acting pursuant to a valid court order, (i.e., the directive of Judge Chronister regarding continued supervision of defendants on bail pending appeal). While the court agrees that actions taken pursuant to valid court orders receive the benefit of absolute immunity from §1983 claims, Hamilton v. Leavy, 322 F.3d 776, 782-83 (3d Cir. 2003), here, defendant Lauer can point to no actual court order directing the supervision of the plaintiff. Instead, the record establishes that defendant Lauer was acting pursuant to a policy created upon the directive of Judge Chronister. Given this, defendant Lauer is not entitled to absolute immunity.

Defendant Lauer argues, in the alternative, that he is entitled to qualified immunity. A probation officer acting in an administrative, executive or ministerial capacity may be entitled to qualified immunity. Wilson v. Rackmill, 878 F.2d 772, 775-76 (3d Cir. 1989); Harper v. Jeffries, 808 F.2d 281, 284 (3d Cir. 1986); Thompson v. Burke, 556 F.2d 231, 237-38 (3d Cir. 1977). Executive or administrative actions include performing the "general responsibilities" of a parole or probation officer. Harper, 808 F.2d at 284 (general responsibilities as probation officer are more executive than judicial in nature subjecting officers to qualified rather than quasi-judicial immunity). The court finds here that the actions of defendant Lauer alleged by the

---

[32]The plaintiff does not bring the instant action against defendant Lauer in his official capacity. To the extent that he had, any such claims against defendant Lauer would also be barred by the Eleventh Amendment.

plaintiff in his complaint fall under the category of executive actions as they appear to fall under the general responsibilities of parole or probation officers.

Saucier v. Katz mandated a two-step analysis concerning qualified immunity: first, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right; and second whether that right was clearly established. 533 U.S. 194, 201 (2001). Under the second prong of the qualified immunity defense, the question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant v. City of Pittsburgh, 98 F.3d 116, 121 (3d Cir. 1996) (citing Anderson v. Creighton, 483 U.S. 635, 636-37, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); Saucier, 533 U.S. at 202. The Supreme Court has held that Saucier's "rigid order of battle" is not a mandatory requirement. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808 (2009). Lower courts can use their discretion to decide which of the two prongs to consider first. Id. at 818.

Here, the court finds under the second prong of the qualified immunity analysis that a reasonable public official in defendant Lauer's position would not have known that his conduct would violate the rights of the plaintiff. To this extent, defendant Lauer was acting pursuant to a policy of the YCAPPD which had been in place since late 2002 or early 2003, and remains in place to this day, which provides that those individuals who are under supervision and are granted an appeal *nunc pro tunc* are to stay under supervision until the actual

filing of the appeal. This policy was put in place in order to assure that those defendants released on bail pending appeal actually filed the appeal and did not obtain release pending appeal and then procrastinate in doing so. The policy was put in place at the direction of then-President Judge Chronister. Upon official notification that the plaintiff had filed his appeal on April 7, 2009, defendant Lauer ceased his supervision of the plaintiff. (Doc. No. 12, Ex. 17). The plaintiff admits that nobody from the YCAPPD has contacted him since that date. Therefore, it appears that defendant Lauer is entitled to qualified immunity with respect to the actions of continuing the plaintiff on the terms of his supervision pending the filing of his appeal *nunc pro tunc*[33].

### B.    Plaintiff's Motion for Partial Summary Judgment

In light of the court's recommendation that the YCAPPD is entitled to absolute immunity and that defendant Lauer is entitled to qualified immunity, the substantive claims raised by the plaintiff in his motion for partial summary judgment need not be addressed.  The plaintiff's motion for partial summary judgment should be dismissed.

---

[33]In light of the court's findings that the YCAPPD is entitled to absolute immunity and that defendant Lauer is entitled to qualified immunity, the substantive claims raised by the defendants in their motion for summary judgment need not be addressed herein.

# IV.    CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)**    the defendants' motion for summary judgment, **(Doc. No. 12)**, be **GRANTED**; and

**(2)**    the plaintiff's partial motion for summary judgment, **(Doc. No. 20)**, be **DISMISSED**.




*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date:**  September 28, 2010

O:\shared\REPORTS\2009 Reports\09-1013-01.wpd