# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY PHILLIP EVANS,** | : | CIVIL ACTION NO. 1:09-CV-1013 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **YORK COUNTY ADULT PROBATION AND PAROLE DEPARTMENT, and DONALD R. LAUER, JR.,** | : | |
| **Defendants** | : | |

## **MEMORANDUM**

Presently before the court are: (1) a motion for summary judgment (Doc. 12), filed by defendants York County Adult Probation and Parole Department (the "Department") and Donald R. Lauer, Jr. ("Lauer"), (2) a motion for partial summary judgment (Doc. 20), filed by plaintiff Gary Phillip Evans ("Evans"), and (3) the magistrate judge's report (Doc. 36) recommending that defendants' motion (Doc. 12) be granted and that Evans's motion be denied. Evans has filed objections to the magistrate judge's report and recommendation ("R&R"), and the parties have fully briefed the issues raised by Evans's objections, (see Docs. 37-40). For the reasons set forth below, the court will adopt the R&R in part and reject it in part.

## I. **Factual Background & Procedural History**[1]

On February 28, 2007, after being convicted in state court of two counts of Indecent Assault and Corruption of Minors and Unlawful Contact with Minors, Evans was sentenced to 11½ - 23 months in York County Prison and five years probation. He came under supervision of the Department and defendant Lauer, his probation officer, when he was paroled on December 13, 2007. Evans filed a post-conviction petition, which the state court granted on March 9, 2009. The state court reinstated Evans's right to appeal his conviction *nunc pro tunc*. Four days thereafter, the Honorable Penny Blackwell released Evans on bail pending his appeal.

In the instant case, Evans complains that Lauer and the Department unlawfully infringed his constitutional rights by maintaining certain restraints on his freedom after he was released on bail and no longer on parole or probation.[2] There is no dispute that Lauer continued to supervise Evans and continued to enforce the conditions of Evans's probation between March 13, 2009, the date of his release pending appeal, and April 7,

---

[1] The magistrate judge's report recites the facts of this case in greater detail. The factual background set forth in this opinion derives from the magistrate judge's recitation of facts, but it includes only those facts that are pertinent to the objections.

[2] Evans also contends that his contact with Lauer and the Department *prior* to his release on bail "highlight[s] the Parole Department's policies, customs and practices, which continue to result in egregious constitutional violations." (Doc. 1 ¶ 19). However, Evans does not seek "vindication of his constitutional injuries" that allegedly occurred prior to March 13, 2009. (Id.)

2

2009.[3] Indeed, at least some period of post-release supervision comports with a department policy, which provides that individuals under supervision who are granted a right to appeal *nunc pro tunc* must remain under supervision until the Department receives notice that the appeal has actually been filed. Evans filed suit on May 28, 2009, asserting claims under 42 U.S.C. § 1983,[4] and alleging violations of his rights under the First, Fifth, Sixth, and Fourteenth Amendments. (Doc. 1).

---

[3] Defendants contend that they received notice of Evans's appeal on April 7, 2009, and that their supervision of Evans ceased on the same date. (See Doc. 12, Ex. 1, Ex. 15 at 24:21-26:15, Ex. 17). Evans disputes this account in two respects.

First, Evans denies that Lauer learned of his appeal on April 7, 2009. He contends that Lauer became aware of the appeal on an earlier, unspecified date, and that he and Lauer specifically discussed the fact of his appeal in their meetings. (Doc. 20, Ex. B at 148:22-149:19). Evans estimated that he had three or four meetings with Lauer *after* advising him of the appeal, (id. at 125:9-126:16), but he was unsure about the dates of their meetings. Evans does not dispute that their last meeting occurred on April 7, 2009, (see Doc. 12, Ex. 17).

Second, Evans asserts that defendants continued the enforcement of his restrictions after April 7, 2009. The complaint alleges that on April 8, 2009, Lauer told Evans that the Department lacked authority over him, and that he would no longer be required to attend meetings, but that certain restrictions would remain in force. (Doc 1 ¶¶ 82-85). Importantly, however, Evans has failed to present evidence supporting this allegation. He cites only to his complaint. (See Doc. 27 ¶ 94; Doc. 28 at 31; Doc. 37 at 11; Doc. 40 at 9). It is hornbook law that Evans cannot survive summary judgment by "rest[ing] upon the mere allegations" of his complaint. See infra Part II.A. *Allegata* do not serve as evidence, for purposes of the court's summary judgment analysis and, therefore, the court rejects this aspect of Evans's argument.

[4] Section 1983 of Title 42 of the United States Code offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 477 (3d Cir. 2003). To establish a claim under this section, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The magistrate judge recommended granting summary judgment in favor of the Department, on the basis that the Eleventh Amendment bars actions against state entities, including the Department. (Doc. 36 at 30-32). He also recommended that summary judgment be granted in Lauer's favor on the basis of qualified immunity. (Id. at 33-35). In accordance with these recommendations, the magistrate judge concluded that no discussion of Evans's substantive claims was necessary, and he recommended dismissal of Evans's motion for partial summary judgment. Evans filed objections to the magistrate judge's conclusion that Lauer is entitled to qualified immunity, and he maintains that the court should enter partial summary judgment in his favor against Lauer. The parties have fully briefed the issues, and the matter is now ripe for review.

## II. Standard of Review

### A. Standard of Review for a Motion for Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). A motion for summary judgment places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P.

4

56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

In the instant matter, each party has filed a motion for summary judgment.[5] (See Docs. 12, 20). According to the Third Circuit:

> Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008) (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)). Each movant must show that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny the motions. See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1023 (3d Cir. 2008). When reviewing each motion, the court is bound to view the evidence in the light most favorable to the nonmovant. FED. R. CIV. P. 56; United States v. Hall, 730 F. Supp. 646, 648 (M.D. Pa. 1980).

### B. Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report. Supinski v. United Parcel Serv., Civ. A. No. 06-0793, 2009 WL 113796, at *3 (M.D. Pa. Jan. 16, 2009) (citing Sample v. Diecks, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989); 28 U.S.C. § 636(b)(1)(c)).

---

[5] The court notes that Evans's motion seeks partial summary judgment, rather than judgment on all claims. This distinction does not affect the standards that govern the court's consideration of the pending motions. See FED. R. CIV. P. 56(a)-(b) (providing that a party claiming relief or a defending party may move "for summary judgment on all or part of the claim").

"In this regard, Local Rule of Court 72.3 requires 'written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'" Id. (citing Shields v. Astrue, Civ. A. No. 07-417, 2008 WL 4186951, at *6 (M.D. Pa. Sept. 8, 2008)).

## III. Discussion

Evans objects to the report and recommendation of the magistrate judge insofar as it concludes that Lauer enjoys qualified immunity. (See Doc. 38). Evans contends that, in considering the defendants' motion for summary judgment, the magistrate judge failed to view the evidence in the light most favorable to him and failed to apply the proper standards in evaluating Lauer's qualified immunity claim. Evans also contends that he is entitled to summary judgment against Lauer. The court will address these arguments in turn.[6]

### A. **Defendants' Motion for Summary Judgment**

The magistrate judge concluded that the Department is entitled to summary judgment on the basis that, as a state entity, it enjoys immunity from suit under the Eleventh Amendment. Evans does not argue that this conclusion was erroneous, (see Doc. 38 at 1-2), and this court finds no error in it. Thus, without further discussion of the Department, the court will turn to the magistrate judge's recommendation that summary judgment be granted in Lauer's favor on the basis of qualified immunity.

---

[6] The court has also reviewed the remaining portions of the report and recommendation for clear error, and it has found none. Hence, the court adopts the remaining portions of the report and recommendation without further discussion.

6

1. **Qualified Immunity**

Qualified immunity provides not merely a "defense to liability," but rather, "immunity from suit." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It is therefore important to "resolv[e] immunity questions at the earliest possible stage in the litigation." Pearson v. Callahan, 555 U.S. 223, ---, 129 S. Ct. 808, 815 (2009) (quoting Hunter, 502 U.S. at 227). Certain officials, including police officers and other state actors performing "discretionary functions,"[7] are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Pearson, 555 U.S. at ---, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Wilson v. Layne, 526 U.S. 603, 609 (1999).

Application of qualified immunity implicates two distinct inquiries. The first inquiry evaluates whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223, 129 S. Ct. 808; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the plaintiff fails to make a *prima facie* showing that the defendant committed a constitutional infraction, the court must dispose of the claim in defendant's

---

[7] Evans does not challenge the magistrate judge's finding that Lauer, as a probation officer, enjoys qualified immunity for certain conduct. The R&R noted that "[a] probation officer acting in an administrative, executive or ministerial capacity may be entitled to qualified immunity[,]" and that "[e]xecutive or administrative actions include performing the 'general responsibilities' of a parole or probation officer." (Doc. 36 at 33). The magistrate judge proceeded to find that "the actions of defendant Lauer . . . fall under the category of executive actions[,] as they appear to fall under the general responsibilities of parole or probation officers." (Id. at 33-34). Evans's objections do not contest this portion of the R&R, and the undersigned finds no error in it.

7

favor. See Saucier, 533 U.S. at 201. However, if the facts indicate that a constitutional violation was committed, the second inquiry assesses whether the right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at ---, 129 S. Ct. at 815-16; Saucier, 533 U.S. 201-02. A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged upon constitutional mandates. Pearson, 129 S. Ct. at 815-16; Williams, 455 F.3d at 191. Hence, a defendant may not invoke qualified immunity if the defendant's conduct diverges from that of a reasonable state actor under the circumstances. Williams, 455 F.3d at 191. The court is not required to conduct these two inquiries sequentially. Pearson, 555 U.S. at ---, 129 S. Ct. at 820. The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were *clearly established* at the time the defendant acted. Id.

If immunity is raised at the summary judgment stage, and if the court chooses to address the plaintiff's showing of constitutional violations—the first inquiry described above—then the court's analysis of the alleged violations essentially merges with its analysis of the merits. See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").

8

Evans claims that Lauer has violated at least seven distinct constitutional rights,[8] and that Lauer retaliated against him for exercising his rights. In light of the number of alleged constitutional violations at issue, the court declines to begin its analysis with an evaluation of the sufficiency of Evans's evidence on each claim. See generally Pearson, 555 U.S. at ---, 129 S. Ct. at 820. Rather, as a preliminary matter, the court will consider the second inquiry described above—whether Lauer is entitled to qualified immunity on the basis that the rights asserted by Evans were not "clearly established."

To determine whether a public official is entitled to qualified immunity, the court must ascertain "whether a reasonable public official would know that his or her specific conduct violated clearly established rights." Grant, 98 F.3d at 121 (citing Anderson v. Creighton, 483 U.S. 635, 636-37 (1987)). This requires an examination of whether the defendant should have known that his or her actions contravened statutory or constitutional guarantees. Gruenke, 225 F.3d at 299-300. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. at 640 (citation omitted).

---

[8] Evans invokes his rights to be free from compelled speech, and to enjoy freedom of speech, of religion, and of association under the First Amendment. He also asserts his Fifth Amendment right to be free from compelled self-incrimination and his Sixth Amendment right to counsel. Finally, Evans invokes his Fourteenth Amendment rights to interstate and intrastate travel and to freedom of association and familial integrity under the due process clause.

9

In the instant case, a disputed factual issue prevents the undersigned from determining whether the unlawfulness of Lauer's actions was apparent. For the reasons that follow, the undersigned concludes that Lauer's conduct should be cloaked in qualified immunity insofar as it was supported by a department policy—a policy which permitted Lauer to continue supervising Evans until the Department received notice that Evans filed an appeal *nunc pro tunc*.[9] However, there is a factual dispute concerning the date on which Lauer, and by extension the Department, received notice of the filing of the appeal. Thus, at this juncture, the court cannot determine whether Lauer's actions comported with policy and whether he enjoys qualified immunity.

The parties agree that Evans was released on bail on March 13, 2009, pending his appeal *nunc pro tunc*. They further agree that Lauer continued supervising Evans after this date, at least until April 7, 2009. Evans contends that Lauer had no authority to restrict him while he was released on bail. (See, e.g., Doc. 37 at 3-6). He argues that "any reasonable parole officer would have known that bail pending appeal operates to temporarily suspend a defendant's sentence." (Id. at 4). On the other hand, Evans does not dispute that Department policy *requires* continuous supervision until the Department receives notice of the filing of the appeal. (See Doc. 15 ¶¶ 90-91, Doc. 27 ¶¶ 90-91; see also Doc. 12, Ex. 1). Evans argues that the existence of this policy is irrelevant, (Doc. 37 at 10), but he is incorrect. In Wilson v. Layne, 526 U.S. 603 (1999), the

---

[9] As the magistrate judge explained, (see Doc. 36 at 34-35), the policy at issue "had been in place since late 2002 or early 2003," "at the direction of then-President Judge Chronister[,]" and it is still in force. The purpose of the policy is "to assure that those defendants released on bail pending appeal actually filed the appeal and did not obtain release pending appeal and then procrastinate in doing so."

10

Supreme Court concluded that certain United States marshals enjoyed qualified immunity, and the Court stated that the marshals' reliance on a Marshal's Service policy was "important to our conclusion[.]" Id. at 617. Hence, contrary to Evans's assertion, the existence of the policy supporting Lauer's conduct is quite relevant. It was objectively reasonable for Lauer to believe that, insofar as he was following the policy, his conduct was lawful.

Of course, if Lauer's beliefs were contrary to a decided body of case law, then no department policy could transform them into reasonable beliefs. See id. In this case, however, Evans has not presented the court with any authority declaring or suggesting that the policy is patently unlawful.[10] In the absence of any such authority, it is significant that Lauer's conduct was contemplated and supported by standard Departmental policy. Even though the court views the evidence in the light most favorable to Evans at this juncture, it cannot conclude that a reasonable person in Lauer's position should have known that the Constitution required him to *deviate* from standard policy in order to avoid violating Evans's rights. Lauer's conduct in this case is therefore cloaked in qualified immunity to the extent that he complied with the Department's policy.

---

[10] Recognizing the problems inherent therewith, the court takes no position on the propriety of the policy itself. As noted, the legality of the policy is of no moment to the court's decision that Lauer is entitled to qualified immunity insofar as he followed it. In Wilson, 526 U.S. at 614-18, the Supreme Court found that the conduct of certain U.S. marshals violated the Fourth Amendment, but it also concluded that the marshals enjoyed qualified immunity, in part because the law governing their conduct was not well developed, and because they relied "on a Marshal's Service . . . policy which explicitly contemplated" the challenged conduct. Thus, when an officer reasonably relies on what is later determined to be an errant policy, he will nevertheless enjoy qualified immunity.

11

Evans also recounts the restrictions that were placed on him and argues that they violated his constitutional rights. His assertion that "there are clearly established rights to speech, silence, travel, assembly, religion, counsel and [freedom] from retaliation[,]" (Doc. 37 at 12), is correct in certain context, but Evans does not delineate the violations of these rights at the appropriate level of specificity for purposes of analyzing qualified immunity. See Wilson, 526 U.S. at 615. The Supreme Court has warned against applying the qualified immunity standard at too distant a "level of generality," and it has held that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. at 639-40. Hence, although Evans can argue that his rights are "clearly established," the precise contours of these rights are not so clear in the unique procedural posture of the underlying criminal proceedings, such that the alleged unlawfulness of the conduct permitted by Department policy was apparent. Thus, this argument fails to refute Lauer's entitlement to qualified immunity.

A factual dispute prevents the court from concluding that Lauer's conduct is entirely cloaked by qualified immunity. Viewing the evidence in a light most favorable to Evans, it is not clear that Lauer actually complied with Department policy. As explained supra, note 3, Evans denies that Lauer learned of his appeal on April 7, 2009. Evans contends that he and Lauer specifically discussed the appeal at several meetings, on earlier dates. (Doc. 29, Ex. B at 148:22-149:19). Evans also recalled three or four meetings with Lauer after advising him about the appeal. (Id. at 125:9-126:16). In light of the evidence that their last meeting occurred on April 7, 2009, (see Doc. 12, Ex. 17), this testimony suggests that Lauer learned of the appeal at an earlier date and, thereafter,

12

acted in contravention of Department policy.[11] This factual dispute prevents the court from concluding that Lauer enjoys qualified immunity for his conduct. The court will therefore turn to defendants' other summary judgment arguments.

   2.   **Heck v. Humphrey**

Defendants contend that Evans's claims are barred by the Heck doctrine, see Heck v. Humphrey, 512 U.S. 477 (1994), which prevents a plaintiff from bringing a civil rights suit that challenges the validity of a criminal conviction. In Heck, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under
> § 1983.

Id. at 486-87; see also Hunt v. City of Scranton, No. 06-4381, 2007 WL 1624099, *2-3 (3d Cir. June 6, 2007). The court is not persuaded that the Heck doctrine applies to the instant claims against Lauer. The alleged unlawfulness of Lauer's actions would not render Evans's conviction or sentence invalid and, therefore, Heck is inapplicable.

---

   [11] Without the benefit of briefing on the issue of what constitutes adequate notice to the Department, the court acknowledges that Evans's verbal assurances to Lauer, concerning the filing of his appeal, might be inadequate to trigger the end of his supervision. However, viewing the evidence in the light most favorable to Evans, Lauer may have had notice of the appeal through other sources, not merely Evans's oral statements. Evans testified that Lauer said to him, "[Y]ou're on bail, I know you appealed your case." (Doc. 29 Ex. B at 148:5-6). Evans was unsure whether Lauer found out about the appeal from another source, but according to Evans, the two of them discussed his appeal, and Lauer did not explain how he became aware of it, but he did say, "I know, I'm aware of that." (Id. at 149:1-21.)

### 3. **Waiver**

Lastly, defendants argue that Evans "either waived his claims voluntarily or by failing to exhaust his remedies by filing a written complaint with the Chief of the York County Adult Probation Department." (Doc. 39 at 6). The court does not agree that Evans has waived his claims voluntarily, nor is it persuaded that a waiver of Evans's § 1983 claim can be implied from failure to exhaust. As a general rule, "plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." Porter v. Nussle, 534 U.S. 516, 523 (2002). The only case cited by defendants to support the proposition that waiver should be implied from a plaintiff's failure to exhaust his remedies is Commonwealth v. Lebo, 713 A.2d 1158 (1998), (see Doc. 18 at 24), but Lebo does not control the instant case. Lebo involved a waiver resulting from the presentation of an argument for the first time on direct appeal. By contrast, the instant § 1983 claim arises in a civil action that is separate from Evans's underlying criminal conviction and, as the court has already noted, the claim does not challenge the validity of Evans's conviction or sentence. For all of these reasons, the court declines to grant summary judgment on the basis of waiver. Thus, defendants' motion for summary judgment has failed, and the court will turn to Evans's motion for partial summary judgment.

### B. **Plaintiff's Motion for Partial Summary Judgment**

The court rejects Evans's argument that he is entitled to summary judgment against Lauer. Viewing the evidence in the light most favorable to Lauer, a reasonable jury could conclude that Lauer's conduct is cloaked in qualified immunity. As a result of

the factual dispute discussed above, this matter must be resolved by the factfinder. Therefore, Evans's motion for partial summary judgment will be denied.

## IV. <u>Conclusion</u>

The court agrees with the magistrate judge's recommendation to grant summary judgment in favor of the Parol Department on the basis of Eleventh Amendment immunity from suit. With respect to the issue of Lauer's immunity, the court rejects the analysis of the magistrate judge, and finds that a genuine dispute of material fact prevents resolution of this issue. The court has also considered Lauer's other arguments and concludes that he is not entitled to summary judgment. Accordingly, defendants' motion for summary judgment will be granted in part and denied in part. Evans has failed to persuade the court that summary judgment in his favor is proper, and his motion will be denied.

An appropriate order will issue.

                     S/ Christopher C. Conner  
                     CHRISTOPHER C. CONNER  
                     United States District Judge

Dated:       December 10, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY PHILLIP EVANS,** | : | **CIVIL ACTION NO. 1:09-CV-1013** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **YORK COUNTY ADULT PROBATION AND PAROLE DEPARTMENT, and DONALD R. LAUER, JR.,** | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 10th day of December, 2010, upon consideration of the report of the magistrate judge (Doc. 36), wherein the magistrate judge recommends that the motion for summary judgment (Doc. 12) filed by defendants York County Adult Probation and Parole Department (the "Department") and Donald R. Lauer, Jr. ("Lauer") be granted, and wherein the magistrate judge recommends that the motion for partial summary judgment (Doc. 20) filed by plaintiff Gary Phillip Evans ("Evans") be denied, and upon further consideration of objections and responsive briefs (Docs. 37-40) filed in response to the magistrate judge's report and recommendation, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The report of the magistrate judge (Doc. 36) is ADOPTED in part and REJECTED in part as follows:

    a. REJECTED with respect to the conclusion that Lauer enjoys qualified immunity and that defendants' motion for summary judgment should therefore be granted in full.

    b. ADOPTED in all other respects.

2. Defendants' motion for summary judgment (Doc. 12) is GRANTED in part and DENIED in part as follows:

    a. Summary judgment is GRANTED in favor of the Department.

    b. Summary judgment is DENIED in all other respects.

3. Evans's motion for partial summary judgment (Doc. 20) is DENIED.

4. The Clerk of Court is directed to defer the entry of judgment on the claims described in Paragraph 2(a) until the resolution of all claims.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge