IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY PHILLIP EVANS,** | : | **CIVIL ACTION NO. 1:09-CV-1013** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| v. | : | |
| | : | |
| **YORK COUNTY ADULT PROBATION** | : | |
| **AND PAROLE DEPARTMENT**, and | : | |
| **DONALD R. LAUER, JR.,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

Presently before the court in the above captioned matter is plaintiff Gary Evans' ("Evans") Post-Trial Motion (Doc. 80), filed December 7, 2011.

In this motion, Evans first requests a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50, a motion for relief and/or to alter or amend judgment under Federal Rule of Civil Procedure Rule 59(e) and 60(b), or alternatively, a motion for a new trial under Federal Rule of Civil Procedure 59(a), all on the basis that the court committed an error of law by not providing due consideration to Evans' substantive constitutional claims and instead entering judgment in favor of defendant Donald R. Lauer, Jr. ("Lauer") on the basis of qualified immunity. Evans also requests a motion for a new trial under Federal Rule of Civil Procedure 59(a) based on a number of evidentiary rulings made by the court during trial. This motion is fully briefed and ripe for disposition. For the reasons that follow, the court will deny the motion.

I.     **Factual Background & Procedural History**

On February 28, 2007, after having been convicted in state court of a sex offense, Evans was sentenced to 11½ - 23 months in York County Prison and five years probation.  He came under supervision of the York County Adult Probation and Parole Department ("the Department") when he was paroled on December 13, 2007.  Defendant Lauer was assigned as his probation officer.  Evans filed a post-conviction petition, which the state court granted on March 9, 2009.  The state court reinstated Evans's right to appeal his conviction *nunc pro tunc*.  Four days later, the Honorable Penny Blackwell of the Court of Common Pleas of York County released Evans on bail pending his appeal.

Evans filed suit on May 28, 2009, asserting claims under 42 U.S.C. § 1983, and alleging violations of his rights under the First, Fifth, Sixth, and Fourteenth Amendments.  (Doc. 1).  Specifically, Evans complained that Lauer and the Department violated his constitutional rights by maintaining certain restraints on his freedom after he was released on bail and no longer on parole or probation.  It was undisputed that Lauer continued to supervise Evans and continued to enforce the conditions of Evans's probation between March 13, 2009, the date of his release pending appeal, and April 7, 2009.  However, defendants claim that they did not receive notice of Evans's appeal until April 7, 2009, when they ceased supervision. Defendants allege that post-release supervision comported with departmental policy, which provides that individuals under supervision who are granted a right to

2

appeal *nunc pro tunc* must remain under supervision until the Department receives notice that the appeal has actually been filed.

Defendants filed a motion for summary judgment (Doc. 12) and Evans filed a motion for partial summary judgment (Doc. 20). Magistrate Judge Mannion recommended granting summary judgment in favor of the Department, on the basis that the Eleventh Amendment bars actions against state entities, including the Department. (Doc. 36, at 30-32). He also recommended that summary judgment be granted in Lauer's favor on the basis of qualified immunity. (Id. at 33-35). The court agreed with the magistrate judge's recommendation to grant summary judgment in favor of the Department on the basis of its Eleventh Amendment immunity from suit. (Doc. 41, at 15). The court held that Lauer was entitled to qualified immunity only to the extent that he followed the Department's policy of supervising persons released on bail pending appeal. However, the court found that there was a genuine dispute of material fact as to whether Lauer learned of Evans' appeal prior to April 7, 2009 but nonetheless continued supervision in contravention of departmental policy. (Id. at 7-15).

Prior to trial, Evans filed a motion *in limine* which sought to exclude evidence of the nature of his criminal conviction from trial. (Doc. 45). The court denied Evans's motion *in limine*, but excluded any reference to details of the crimes without prior approval from the court. (Doc. 50).

Trial took place on November 7-9, 2011. At the conclusion of trial, the jury found that Lauer did not supervise Evans after he had discovered that Evans filed

3

his appeal; therefore, Lauer was protected from suit on the basis of qualified immunity. (Doc. 72). The court entered judgment in favor of Lauer and against Evans on November 9, 2011.

## II. Legal Standard

As a threshold matter, the court notes that Evans asserts errors of law in the following procedural vehicles: (1) a "Motion for Relief from Decision Denying Gary Evans Summary Judgment as to Liability" under Federal Rules of Civil Procedure 59(e) and 60(b); (2) a "Motion for Relief from Decision Holding Don Lauer Entitled to Summary Judgment As Long as He Followed Parole Department Policy" under Federal Rules of Civil Procedure 59(e) and 60(b); (3) a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 and/or to alter/amend the judgment under Federal Rule of Civil Procedure 59(e); and (4) a motion for a new trial on liability under Federal Rule of Civil Procedure 59(a).

The court will consider these matters collectively as motions to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) or, alternatively, as a motion for a new trial under Federal Rule of Civil Procedure 59(a). The court notes that Evans cannot file a renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) because he never made a motion for judgment as a matter of law at any time before the case was submitted to the jury. See Fed. R. Civ. P. 50(a)(2) ("[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury".). The court resolved the issue of Evans' First Amendment compelled speech, Fifth Amendment compelled

4

self-incrimination, and Sixth Amendment right to counsel claims against Evans, as well as his due process claim (based on his inability to live with his family) pursuant to Rule 50(a)(1)(A), which provides that a court may resolve an issue against a party once the party has been fully heard on the issue and the court finds that a reasonable jury would not have a sufficient evidentiary basis to find for the party on that issue. Thus, we will treat Evans' motion on this specific issue as a motion to alter or amend a judgment under Rule 59(e).

The court will also consider Evans' motions submitted pursuant to 60(b) as motions to alter or amend a judgment pursuant to Rule 59(e). When a motion is filed within 28 days of the entry of judgment, it must be considered under Rule 59(e), not Rule 60(b). See Fed. R. Civ. P. 59(e) advisory committee's note (2009 amend.) (expanding the former 10 day time period for filing a motion to alter or amend a judgment to 28 days). See Rankin v. Heckler, 761 F.2d 936, 942 (3d Cir. 1985) (holding that "[r]egardless how it is styled, a motion filed within ten days of entry of judgment questioning the correctness of a judgment may be treated as a motion to alter or amend the judgment under Rule 59(e)"); CTC Imports and Exports v. Nigerian Petroleum Corp., 951 F.2d 573, 577 (3d Cir. 1991) (holding that "as in Rankin because plaintiff 'filed his motion seven days after entry of judgment, we treat it as a motion under Rule 59(e) challenging the entire judgment, including the [merits]'" even though the motion was identified as a Rule 60(b) motion). In this case, the court entered the final judgment on November 9, 2011. This motion was

filed on December 7, 2011, 28 days later.  Accordingly, we will consider this motion under the rubric of Rule 59(e) and not under Rule 60(b).

Motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) serve primarily to correct analytical errors in a prior decision of the court.  See FED. R. CIV. P. 59(e); United States v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds:  (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of."  Waye v. First Citizen's Nat. Bank, 846 F. Supp. 310, 314 (M.D. Pa. 1994).

A motion for a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  The decision of whether to grant a new trial is generally entrusted to the sound discretion of the district court.  See Greenleaf v. Garlock, Inc., 174 F.3d 352, 363 (3d Cir. 1999).  The court's power to grant a new trial motion is limited to circumstances "where a miscarriage of justice would result if the verdict were to stand."  Gagliardo v. Connaught Laboratories, Inc., 311 F.3d 565, 572 (3d Cir. 2002) (citations and quotations omitted).  For motions for a new trial

6

based on alleged errors in the court's evidentiary rulings, the court must determine whether an error was in fact made, and also whether the error was so prejudicial that it affects "any party's substantial rights." Fed. R. Civ. P. 61.

## III. Discussion

### A. Motion for Reconsideration on Liability

Evans first requests reconsideration of the court's denial of Evans's motion for summary judgment and grant of Lauer's motion for summary judgment on the basis of qualified immunity. Evans essentially rehashes his original arguments on each of these issues. He contends that Lauer should not possess qualified immunity because no reasonable parole officer could believe that the Department's policy of continuing supervision was constitutional. Evans has not set forth any grounds to overturn the well reasoned conclusions of Magistrate Judge Mannion in his report and recommendation (Doc. 36) and the determinations of the court in its prior memorandum and order (Doc. 41).

Application of qualified immunity requires two distinct questions. First, the court must determine whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009); Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). Second, the court must analyze whether the right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232. A right is "clearly established" if a reasonable state actor under the circumstances would have known that his or her conduct impinged

7

upon constitutional mandates.  Pearson, 555 U.S. at 231; Williams, 455 F.3d at 191.  The court may eschew difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted.  Pearson, 555 U.S. at 236.  Thus, as long as a probation officer is "acting in an administrative, executive or ministerial capacity," (Doc. 36 at 33), and reasonably would not have known that his or her conduct impinged upon constitutional rights, he is shielded from suit for his actions.  Pearson, 555 U.S. at 232 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Wilson v. Layne, 526 U.S. 603, 609 (1999).

Here, the rights asserted by Evans were not "clearly established."  Lauer's conduct was supported by a department policy which permitted Lauer to continue supervising Evans until the Department received notice that Evans filed an appeal *nunc pro tunc*.  This policy had been in place since "late 2002 or early 2003," "at the direction of then-President Judge Chronister." (Doc. 36 at 34-35).  The purpose of the policy is "to assure that those defendants released on bail pending appeal actually filed the appeal and did not obtain release pending appeal and then procrastinate in doing so." (Id.)

Evans has not presented the court with any authority declaring or suggesting that the Department's policy is patently unlawful.  See Wilson v. Layne, 526 U.S. 603, 604-605 (1999) (concluding that certain United States marshals enjoyed qualified immunity due to their reliance on a Marshal's Service policy and because the law governing their conduct was not well developed).  As we noted in our

previous order, "the precise contours of [Evans'] rights are not so clear in the unique procedural posture of the underlying criminal proceedings, such that the alleged unlawfulness of the conduct permitted by Department policy was apparent." (Doc. 41, at 12).

The jury concluded that Lauer acted pursuant to the Department policy when he continued supervising Evans after his release on bail. Thus, Lauer's conduct was cloaked in qualified immunity and judgment was appropriately entered in his favor. Further examination of the constitutionality of the underlying conduct is unnecessary because even if it was unconstitutional, it was not "clearly established" as such, and Lauer is shielded from suit.[1]

Evans does not present any persuasive grounds for the court to grant his post trial motion to alter or amend the judgment or, alternatively, for a new trial. All that remains is Evans's motion for a new trial based on a number of evidentiary rulings the court made during the trial.

**B.   Motion for a New Trial**

In addition to his motion for reconsideration regarding his substantive constitutional claims, Evans also requests a new trial under Federal Rule of Civil Procedure 59(a) based on a number of evidentiary rulings the court made during

---

[1] Evans also argues that the court's dismissal of his First Amendment, Fifth Amendment, Sixth Amendment, and due process claim was legal error. The court correctly dismissed these claims for the reasons stated on the record which we incorporate by reference herein. (Doc. 69, at 8-13).

trial. Whether viewed separately or in the aggregate, the court's evidentiary rulings are not so erroneous or egregious as to warrant a new trial.

### 1. **Evidence of Convictions**

First, Evans asserts that he is entitled to a new trial because the court allowed evidence that Evans was convicted of a sex offense. Evans rehashes the same arguments presented in support of his motion *in limine* on this issue. (Compare Doc. 46 at 8-10 with Doc. 82 at 31-34). The court hereby incorporates its order denying Evans' motion *in limine*. (Doc. 50). The court's exclusion of any details of the crime struck the appropriate balance between admitting probative evidence and avoiding the danger of unfair prejudice against Evans.

### 2. **Testimony of Al Sabol**

Next, Evans moves for a new trial based on York County Adult Probation and Parole Department Chief Al Sabol's ("Sabol") testimony regarding instructions from the York County Common Pleas Court on how to supervise sex offenders, particularly when they post bail and pursue an appeal. Evans argues that this testimony was inadmissible hearsay. Evans states that he was prejudiced by its admission because the jury was informed that the policy was judicially mandated rather than simply borne out of the Department. Evans further argues that the testimony was irrelevant because there was no evidence that defendant Lauer was aware that the policy was judicially mandated. The contested portion of Sabol's testimony is as follows:

Q: What is the policy with regard to church attendance?

A: The policy in conjunction with condition number 6 we did quite sometime ago, I'm going to say approximately 2002 to 2003, shortly after I became chief we did confer with the court and we decided to initiate our –

Mr. Autry: Your Honor, I'm going to object to the hearsay conversation that took place between Mr. Sabol or may or may not have taken place between Mr. Sabol and the court.

Court: Well, I think these are background discussions. This is the foundation for a policy, if I understand it correctly it's a foundation question. I'm going to allow it to, allow him to respond. You may continue.

A: Where we decided that the usual and customary practice of religion would be the weekly church service in an effort to balance to allow individuals to worship, yet at the same time, and again I'll go back to what I was explaining before, sex offenders do present a certain danger to the community. . .

. . .

Q: I want to discuss now a different policy. Does your office have a policy with regard to continued supervision of individuals after they've posted bail, after they've received the right to file an appeal and they've posted bail?

A: Yes, we do.

Q: Can you just tell the jury if you would, please, how long that policy has been in effect and what the policy is?

A: What the policy is, it actually went into effect in 2002, late 2002, might have been early 2003 where we had a situation where someone was allowed to appeal a case well into their sentence, and I reviewed this particular case which at the time President Judge John Chronister, who directed me to cease and desist supervising

>individuals when they filed an appeal.  What he stated
>was that, you know, once an appeal is taken to one of the
>upper courts, that jurisdiction then resides with that
>court and that we lose jurisdiction and that the probation
>department should not be supervising those individuals.
>
>What we put into – it doesn't happen too often, but it does
>happen, and what we did was we initiated the policy
>where if someone takes an appeal we will cease and desist
>supervision and close the case until the appeal has been
>settled.  What we will do though is we will continue to
>supervise those individuals who are under sentence until
>the actual appeal is filed.
>
>Mr. Autry: Your Honor, I'm just going to, I understand
>you've already ruled on the hearsay.  I'm just going to
>note my objection again to the hearsay.
>
>Court: [T]he objection is overruled. It's too late. You may
>proceed.

(Doc. 67, at 123-128).

Hearsay is an out of court statement, made by someone other than the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  For Evans' first objection, no statement was actually offered into evidence.  Sabol simply testifies that the Department "did confer" with the court.  The fact that the Department conferred with the court is not a hearsay statement.

Evans's second objection was not timely.  Only after Sabol further testified about the Department's policy for several sentences did Evans's counsel object to

Sabol's testimony regarding Judge Chronister's statements.[2]  Moreover, even if Evans' objection was timely, Sabol's testimony that President Judge John Chronister directed him to cease supervising individuals once they filed an appeal is not hearsay.  No statement of Judge Chronister's was ever offered into evidence to prove its truth.  Instead, the statements were being offered into evidence to show the effect on the listener: due to Judge Chronister's statements to Sabol, the Department instituted a policy ceasing supervision of individuals when they file an appeal.  See Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 383 (3d Cir. 2002) (holding that a statement from an employer's doctor that an employee could not wear a respirator was not hearsay because it was not offered for its truth but rather to explain why the employer did not allow the employee to return to his job); United States v. Reilly, 33 F.3d 1396, 1410 (3d Cir. 1994) (holding that directions to an individual to do something are not hearsay "because they are not declarations of fact and therefore are not capable of being true or false").  Judge Chronister's statements merely provided context and an explanation for the creation of the Department's policy.

---

[2] Evans claims that Federal Rule of Evidence 103(b) applies because of his previous hearsay objection.  Rule 103(b) states that once the court rules definitively on the record, a party need not renew an objection.  However, Evans's first objection regarded a conversation between Sabol and the court pertaining to the Department's church attendance policy.  His second objection regarded discrete statements made by Judge Chronister pertaining to the Department's policy of ceasing supervision of defendants when they file an appeal.

Testimony that the York County Common Pleas court influenced the Department's policy was certainly relevant. Even if Lauer did not know that this policy was judicially mandated, it illuminated the origins of the Department's policy. The court's ruling was correct and plaintiff's arguments to the contrary are unavailing.

### 3. Petition to Modify Parole Conditions

Evans also moves for a new trial because he states that Lauer's counsel improperly impeached him with a petition to modify parole conditions filed by Evans's former lawyer. When Evans objected to the relevance of the document at trial, Lauer's counsel explained that Evans "repeatedly stated during cross examination, or direct examination, that it was Mr. Lauer who imposed these conditions upon Mr. Evans, not the court, and my point is to simply say at least at one point Mr. Evans knew to go to the court to seek modification of his probation conditions." (Doc. 67, at 32). In response to questioning, Evans repeatedly denied having any knowledge of the petition.

In his motion for a new trial, Evans argues that "he could not possibly have challenged his parole conditions while he was on bail" so it is irrelevant whether he challenged his parole conditions in the past. (Doc. 82, at 42). He also asserts that he "was under no obligation to challenge his unconstitutional bail conditions in state court, and his failure to do so does not justify Lauer's unconstitutional actions." (Doc. 82 at 41).

The petition to modify parole conditions was at least marginally relevant during trial. The purpose for which defense counsel used the petition was not to show that Evans should have challenged or failed to challenge his restrictions while on bail in state court. Instead, he sought to rebut Evans's asserted belief that Lauer alone inflicted the restrictions upon him. Although Evans denied knowing about the filing of the petition, the jury was free to assess his credibility on this point. The admission of this evidence was not error.

### 4.  **Evans' Notes**

Evans moves for a new trial because he was prohibited from introducing into evidence notes taken during his meetings with Lauer. During cross-examination, Lauer's counsel asked Evans whether he could recall the specific date that he told Lauer about the appeal. (Doc. 67, at 40-45). When Evans provided a specific date, March 17, 2009, Lauer's counsel impeached him with his deposition transcript where he couldn't remember the specific date. (Id. at 46-47). Evans's counsel moved to introduce Evans's notes into evidence during redirect examination. (Id. at 72-73).

Evans' counsel argued that the notes were admissible under Federal Rule of Evidence 801(d)(1)(b) as a prior consistent statement used to rebut the implication that he fabricated his testimony at trial. (Id. at 73). The court ruled that Rule 801(d)(1)(b) does not apply because the statements reflected on the notes were Lauer's statements, not Evans's statements. (Id. at 76-77). Evans's counsel countered that Lauer's statements within Evans's notes were admissible under

15

Rule 801(d)(2) because he was a party-opponent. (Id. at 77). Evans's counsel also claimed that the notes were admissible under either the hearsay exception for recorded recollections under Rule 803(5) or for present sense impressions under Rule 803(1). (Id. at 78-79).

The court correctly prohibited the admission of Evans's notes for the reasons stated on the record which the court incorporates by reference herein. (See Doc. 67, at 76-82). Additionally, Evans's testimony about the notes' creation was inconsistent: Evans testified on the first day of trial that during his meetings with Lauer, Evans "would take down scribbly notes so to speak and write shorthand, and then when I would leave I would write down fully what was said." (Doc. 65, at 116). On the second day of trial, Evans testified that he made no changes to his notes after the meetings. (Doc. 67, at 150). Lauer testified that he could not recall Evans taking notes during the course of the meetings. (Doc. 67, at 170).

Even if the court erred in prohibiting the admission of Evans's notes, it was harmless error. The court permitted Evans to use the notes as needed to refresh his recollection. The jury heard all of the relevant testimony from Evans about the meetings and therefore admission of his notes would have been cumulative evidence. Evans complains that he was disadvantaged because "Lauer relied on his Probate Notes to bolster his own credibility," (Doc. 82, at 45). This complaint is specious as Evans's counsel moved to admit Lauer's Probate Notes into evidence and used them extensively. (Doc. 73; Doc. 65, at 60-80).

16

Additionally, the court properly observed during trial that, under Federal Rule of Evidence 403, the probative value of admitting Evans's notes into evidence was substantially outweighed by the danger of confusing the issues and misleading the jury. The court stated that "the admission into the record of those notes as substantive evidence would confuse the jury with a variety of other issues that are raised in the context of those notes." (Doc. 67, at 102). Hence, there was no prejudice and a new trial is not warranted.

### 5. **Testimony of Evans' Children**

Next, Evans moves for a new trial because the court prohibited his children from testifying. Evans' counsel intended to call his children to testify about the harm caused by the separation from their father. The court determined that the children's testimony would not "provide any relevant information beyond what could be provided by the parents, and it's not crystal clear to me that Mr. Lauer had anything to do with this issue of whether Mr. Evans was permitted to live with his children or not live with his children at various points in time during the criminal proceedings." (Doc. 65, at 53). Even if this decision was erroneous, it was harmless error because the testimony of the children would have been potentially relevant only to the issue of damages, and the jury verdict was adverse to Evans on liability. Moreover, any testimony by the children would have been cumulative of the testimony of Evans and his wife. Thus, a new trial is not warranted on this basis.

### 6.    **Jury Instructions**

Finally, Evans moves for a new trial because the court refused to provide two proposed jury instructions.  First, the court declined to instruct the jury that Lauer had no authority over a person on bail.  The court refused to provide this instruction because of its prior memorandum and order (Doc. 41) holding that Lauer was entitled to qualified immunity to the extent that he followed the Department's policy of supervising persons released on bail pending appeal until he discovered that an appeal had been filed.  (Doc. 69, at 7-8).

Second, the court instructed the jury to limit their "consideration of Mr. Evans's claims to the time period of March 24, 2009 to on or about April 7, 2009, the period from the filing of the notice of appeal to the York County Court of Common Pleas, to the cessation of supervision by Mr. Lauer."  (Doc. 69, at 67).  Evans's counsel told the court that there was a dispute about whether the restrictions continued after April 7, 2009, based on a series of phone calls between Evans and Lauer on April 7 or 8, 2009, during which Lauer allegedly stated that Evans must still comply with several restrictions.  Evans argues that the court "basically ordered the jury to disregard his testimony with this instruction." (Doc. 82, at 52).  This is patently incorrect.  The parties stipulated that the Department did not initiate any further contact with Evans after April 7, 2009, and a single phone call placed after April 7, 2009 was but a minor discrepancy from this stipulation.  (Doc. 67, at 59).  Moreover, the court's jury instruction on the applicable ending date

18

stated "on *or about*" April 7, 2009. Clearly, the court did not instruct the jury to disregard Evans's testimony.

## IV. Conclusion

For the foregoing reasons, the Post-Trial Motion (Doc. 80) will be denied. An appropriate order follows.

                                            S/ Christopher C. Conner  
                                            CHRISTOPHER C. CONNER  
                                            United States District Judge

Dated:        September 17, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GARY PHILLIP EVANS,** : | CIVIL ACTION NO. 1:09-CV-1013 |
| **Plaintiff** : | (Judge Conner) |
| v. : | |
| **YORK COUNTY ADULT PROBATION** : **AND PAROLE DEPARTMENT**, and : **DONALD R. LAUER, JR.,** : | |
| **Defendant** : | |

## **ORDER**

AND NOW, this 17th day of September, 2012, upon consideration of plaintiff Gary Evans' ("Evans") Post-Trial Motion (Doc. 80), filed December 7, 2011, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the Post-Trial Motion (Doc. 80) is DENIED.

                                               S/ Christopher C. Conner
                                               CHRISTOPHER C. CONNER
                                               United States District Judge